## DOLLAR v. LA FONCIERE COMPAGNIE.

(District Court, N. D. California. April 15, 1908.)

1. INSURANCE—MARINE INSURANCE—GENERAL AVERAGE EXPENSE.

If the taking of an injured vessel to a port of necessity for repairs is for the benefit of both owner and insurer, the expense is a general average charge, to which both are bound to contribute, although there is no cargo liable to contribute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1251.]

2. SAME—INJURY OF VESSEL—TOWAGE TO PORT OF NECESSITY FOR REPAIRS.

A steamer, insured under a term policy providing that the insurer should not be liable for any particular average loss not amounting to 5 per cent. net, proceeded to Gray's Harbor for a cargo of lumber for San Francisco, and when entering the harbor broke her rudder, which rendered her unseaworthy. It was agreed between owner and insurer that San Francisco was the nearest port where she could be properly repaired, and by agreement she was loaded with lumber and towed to such port. *Held*, that the expense of such towage was a general average charge, to which the insurer must contribute; the voyage being deemed one of necessity, notwithstanding the fact that it was in completion of the original voyage.

[Ed. Note.—General average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.]

In Admiralty. Suit on policy of marine insurance.

Page, McCutchen & Knight, for libelant.

Andros & Hengstler, for respondent.

DE HAVEN, District Judge. This is an action to recover upon a policy of insurance issued by the defendant to the libelant, January 20, 1903, insuring his interest in the steamer Grace Dollar for the term of one year from loss by reason of perils of the sea; the insurer, however, not to be liable for any particular average loss not amounting to 5 per cent. net. The case was submitted to the court upon an agreed statement of facts, from which it appears:

"While the policy was in force, viz., on August 31, 1903, the steamer Grace Dollar sailed in ballast for Hoquiam, a loading port in Gray's Harbor, there to load a cargo of lumber and to bring the same back to San Francisco. While entering Gray's Harbor, the master, without fault on his part and by reason of a sea peril, missed the channel and touched bottom, thereby severely injuring his vessel's rudder. A jury rudder was fitted on, and she was able to make the harbor under her own steam. From there she was towed to Hoquiam, where she was filled with lumber in her forward part, so that her stern was brought out of the water high enough to allow of her being beached and a better jury rudder fitted. She was thereafter beached, a jury rudder was fitted, and she was again towed off, and then taken to Wood's Mill, in Gray's Harbor, where she loaded a full cargo of lumber; the insurers having consented to towage to San Francisco in her disabled condition provided she should take a cargo of lumber. On September 13th she started for San Francisco in tow of the steam tug Rivala, at which port she arrived in due course.

"There was no opportunity or facility at any of the points named, except San Francisco, to obtain the repairs necessary to make the ship seaworthy. Like facilities existed at Portland, Or., but by agreement between the parties San Francisco was accepted as the nearest port at which this could be done, and under this agreement the vessel proceeded as aforesaid to San Francisco instead of Portland. Gray's Harbor is a safe place at which a vessel may lie protected against the weather at all times."

Upon her arrival at San Francisco the damage sustained by the vessel was repaired, and the cost thereof and also the towage charges were paid by her owners. Thereupon an adjustment was made, in which the cost of towage to San Francisco was treated as a general average charge. The libelant, having paid the charges according to the adjustment so made, seeks to collect the amount thereof from the defendant. The defendant denies liability on the ground that the cost of towage was not properly a general average charge, but a particular average expense not equal to 5 per cent. of the value of the vessel. In the agreed statement of facts it is further stipulated:

"If the said expense of towage to San Francisco be in law a particular average charge, the libelant's proportion of the amount of this and other charges of a particular average nature is less than 5 per cent. net of the amount insured by respondent's policy, and libelant under such conditions has no claim for loss thereunder, by reason of the limitation of clause 1 of the policy, which provides that no claim of partial loss or particular average shall in any event be paid under said policy unless amounting to at least 5 per cent. net. If the said towage expense was properly stated in the said adjustment as a general average charge, the insurers, including the respondent, would be liable under the policy for the amount thereof, and in such event the respondent's liability under the said policy for its proportional share of all general average expense is the sum of $41.25."

From the foregoing statement of facts it will be seen that the question for decision is whether the towage expense, under the circumstances stated, is in the nature of a general average expenditure, or whether it is to be deemed a particular average expense; and I am of opinion that under the facts agreed upon it is a general average

charge, for which the defendant is liable upon its policy, under the rule declared in Potter v. Ocean Ins. Co., 3 Sumn. 27, Fed. Cas. No. 11,335. That was an action to recover upon a policy of marine insurance containing a clause which provided that the insurance company was not to be liable "for wages or provisions, except for general average," and one of the questions involved was the right of the insured to recover the expense incurred by the vessel for wages of crew and provisions in seeking a port of necessity for repairs. It appeared upon the trial of the case that the insured vessel sailed from New Orleans with a cargo to be landed at Tampico. In the course of the voyage both of her masts were carried away by a severe squall. The vessel, however, arrived at Tampico and delivered her cargo. The necessary repairs to enable her to prosecute any further voyage could not be there obtained, and she returned to New Orleans, where the repairs were made; and upon this point her master testified that his return to New Orleans was not in the regular course of the projected voyage, but solely for and from the necessity of the repairs made there, as the nearest and most convenient port for that purpose. In returning from Tampico to New Orleans the vessel carried no cargo. The court instructed the jury:

"That, if it was found that the return to New Orleans was in the regular course of the voyage, then their verdict on that point ought to be for the defendant; if, on the contrary, it was a new voyage of necessity for repairs, then their verdict on that point ought to be for the plaintiff."

There was a verdict for the plaintiff, and this was sustained by the court; and in so doing, after stating that the jury had found that the voyage to New Orleans "was a voyage of necessity for repairs to a proper and convenient port," the court said:

"In the present case the insurance was not upon any particular voyage; but it was on time. Unless the owner had a right to repair the bark so as to perform other voyages within the year at the expense of the underwriters, he must have had a right to abandon to the underwriters for a total loss; for in her crippled condition the bark was incapable of any further employment. The going to New Orleans, therefore, was not an act solely for the benefit of the shipowner, but was for the benefit of the underwriters also, to save them from a total loss. The plaintiff was bound to repair, if he could, and to seek some convenient port for that purpose; and the expenses of going thither were properly incidental expenses to the repairs, in the nature of a general average, to replace the bark in the condition in which she was before the accident."

This case is authority for the propositions: First. That it is not essential to a general average charge that there was cargo upon the vessel liable to make contribution on account of the expenditure claimed as a general average charge; that if only the owner and the insurer are benefited by the expense incurred in taking the injured vessel to a port of necessity for repairs, the latter, upon the principles of general average, is bound to contribute his proportionate share of such expense. Second. That, although a vessel may be in a port and in no immediate danger of loss, yet if she is unseaworthy, and it is necessary for her to seek another port for the purpose of necessary repairs, required in order to put her in a seaworthy condition, the expense incurred by the

vessel in going to the port of necessity constitutes a general average charge.

It is true that in the case just cited the return of the insured vessel to New Orleans was not in the regular course of the voyage intended by her, while in the case at bar the Grace Dollar in returning to San Francisco completed the voyage which she had in view when she sailed for Gray's Harbor; but I do not think this difference in the facts makes the rule followed in Potter v. Ocean Insurance Company inapplicable to the present case, for these reasons: When lying in Gray's Harbor, in her crippled condition, the Grace Dollar was unseaworthy as a result of the damage which she had sustained on her voyage, and the libelant had the right to take her to the nearest and most convenient port for necessary repairs at the expense of the insurers, or to abandon her to the defendant and other underwriters as a total loss. If she had been towed to Portland, the nearest port where she could have been repaired, and a port not in the regular course of the voyage contemplated by the Grace Dollar when she left San Francisco, the expense of towage would have been clearly a general average charge, under the rule followed in Potter v. Ocean Ins. Co., above cited. But it was agreed between the owners and the defendant that San Francisco was to be deemed the nearest port where repairs could be made, and under this agreement the vessel was taken to San Francisco for repairs. In view of this agreement the defendant is estopped from now asserting that the harbor of San Francisco was not the nearest and most convenient port to which the Grace Dollar could have been towed for repairs, or that the towage was for the purpose of enabling her to complete the voyage originally intended, and not for the benefit of the insurers as well. Under the agreement the return of the Grace Dollar from Gray's Harbor to San Francisco, with the assistance of the tug by which she was towed, is to be deemed a new voyage of necessity to the nearest and most convenient port for repairs, and the reasonable expense incurred in reaching the port so agreed on constitutes a general average charge. The fact that before leaving Gray's Harbor she took on a cargo which is not liable to contribute to the expenses of the towage is not material. The carriage of this cargo did not increase the expense of the towage, and it appears from the agreed statement of facts that the defendant, in consenting that the vessel might be towed to San Francisco in her disabled condition, did so upon the condition that she should take on a cargo of lumber. This condition was doubtless insisted upon because there was less liability of the vessel foundering if loaded with lumber than if she should proceed to sea without such cargo. It was not intended by the parties that the carriage of this cargo should in any manner affect the right of her owners to recover from the insurers their proportionate share of the expense of towing the vessel to the port agreed on.

Let a decree be entered in favor of the libelant for the sum of $41.25, with interest from August 31, 1905, and costs.